IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-21698-CIV-COOKE/BANDSTRA

GROVENOR HOUSE, L.L.C.,

        Plaintiff,

v.

E. I. DU PONT DE NEMOURS AND
COMPANY,

        Defendant,

_____/

**DEFENDANT DUPONT'S MEMORANDUM IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
AS TO LIABILITY ON COUNTS I, II, AND III OF THE COMPLAINT
AND TO LIMITATION ON DAMAGES**

## I.   <u>INTRODUCTION</u>

This case is about a high-profile Miami developer, Ugo Colombo, whose company, Grovenor House, LLC ("Grovenor House"), contracted with a general contractor, CMC Construction, Inc. ("CMC Construction") (also owned by Colombo), for the construction of a glass entranceway canopy for a luxurious high-rise condominium in Coconut Grove, Florida ("the Grovenor House Condominium"). The general contractor, at the direction of the developer, subcontracted with a former Italian business associate (of the developer) in the glass and glazing business, Vetreria Longianese, S.R.L. ("Longianese") (the sub-contractor) to manufacture and install the glass canopy at the condominium. Thereafter, the subcontractor purchased from DuPont a product known as SentryGlas® Plus ("SGP"), which is used as an interlayer to manufacture laminated glass. After the subcontractor manufactured and installed the glass canopy at the condominium, panels of the glass canopy began to delaminate (*i.e.,* to split apart).

Instead of suing the designer who designed the canopy, Odine Manfroni, the engineers who oversaw the project, Kelvyn Whitfield and IBA Consulting, the general contractor who was responsible for the construction project, CMC Construction, or even the subcontractor who manufactured and installed the entire glass canopy, Longianese, the developer sued just one party – DuPont.

Grovenor House has asserted claims against DuPont for breach of statutory warranty, Florida Statute 718.203(2) (Count I), negligent misrepresentation (Count II), and breach of express warranty (Count III).   For the reasons that follow, Defendant DuPont is entitled to summary judgment on Counts I, II and III of the Complaint as a matter of law.   Alternatively, with regard to the warranty claims asserted in Counts I and III of the Complaint, partial summary judgment should be granted in favor of DuPont limiting Grovenor House's damages (if any) to the replacement cost of the allegedly defective SGP or the refund of Longianese's purchase price.

## II.   ARGUMENT

### A.   Applicable Legal Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Initially, the movant bears the burden to show the district court, by identifying materials in the record, that there are no genuine issues of material fact that should be decided at trial.  *Ace Technology Corp. et, al. v. GFM Corp.*, 2010 U.S Dist. LEXIS 32945 (March 11, 2010, J. Cooke) (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th

Cir. 1991)). The burden then shifts to the nonmovant to demonstrate that there is indeed a material issue of fact that precludes summary judgment. Id.

However, under Rule 56(e) the nonmovant must not rely on allegations or denials in its own pleading, but instead must designate specific facts from its own affidavits, depositions, answers to interrogatories, and admissions on file showing that there is a genuine issue for trial. *Ace*, *supra*, (citing *Celetox Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548 (1986)).  Thus, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986).

At the summary judgment stage, the court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

**B.     DuPont Is Entitled To Summary Judgment On The Breach of Implied Warranty Claim (Count I).**

In Count I of the Complaint, Grovenor House alleges that DuPont breached its statutory warranty, Florida Statute 718.203(2), which provides in relevant part:

> (2) The contractor, and all subcontractors and **suppliers**, grant to the developer and to the purchaser of each unit **implied warranties of fitness** as to the work performed or **materials supplied** by them[1] as follows:
>
> (a) For a period of 3 years from the date of completion of construction of a building or improvement, a warranty as to the roof and structural components of the building or improvement and mechanical and plumbing elements serving a building or an improvement, except mechanical elements serving only one unit.

---

[1]     In contrast, Florida Statute 718.203(1) provides that "[t]he developer shall be deemed to have granted to the purchaser of each unit an implied warranty of fitness and merchantability **for the purposes or uses intended**. . . ."

(b)  For a period of 1 year after completion of all construction, a warranty as to all other improvements and materials.

Emphasis added.  Specifically, Count I alleges that DuPont breached this statutory implied warranty of fitness as "the SentryGlas® Plus laminating material it supplied for the Grovenor House Condominium's entrance glass canopy system has failed and continues to fail." Complaint ¶ 19. Emphasis added.

### 1.      The Warranty Had Expired By The Time The Alleged Defect Was Discovered.

This claim can be easily disposed of at the outset. The completion of the installation of the glass canopy at the Grovenor House Condominium occurred in December, 2005.  [Statement of Undisputed Facts ("SUF") ¶ 24]. Because the canopy is not a " roof and structural component[ ] of the building or improvement and mechanical and plumbing element[ ] serving a building or an improvement," the statutory warranty must be for a period of one year for improvements or non-structural materials in the building. *See* §718.203(2)(b).[2] Therefore, the warranty period was approximately for December 2005 to December 2006.

Grovenor House did not formally notify DuPont of any problem or alleged defect until July 22, 2008. [SUF ¶ 26, Ex. N].

Accordingly, the warranty period had clearly expired by the time Grovenor House complained of any alleged defect to DuPont.  The time having run on the warranty, the cause of action does not exist as to DuPont.

### 2.      DuPont Is Not A Supplier Of Material Within The Scope Of The Statute.

---

[2]      In this regard, it is irrelevant that Grovenor House had a four year statute  of limitations to file this action as the alleged defect did not occur within the warranty period.  *Charley Topipino & Sons, Inc. v. Seawatch at Marathon Condo Ass'n*, 658 So. 2d 922, 924 (Fla. 1994).

As set forth in the Statement of Undisputed Facts, DuPont was, at best, a remote supplier of a component that was later incorporated by Longianese, using an independent, Italian engineer (Manfroni), into the design and manufacture of the glass canopy which was eventually installed at the Grovenor House Condo.  DuPont supplied the resin that was later extruded by Plastron into sheets that were later incorporated by Longianese into the actual fabrication of the glass canopy in Gambettola, Italy. [SUF ¶ 5].

A fair reading of the plain language of the statute results in the clear conclusion that the Legislature did not intend that remote component suppliers, such as DuPont, whose product is incorporated into a later manufactured product, the glass canopy, are subject to the implied warranty of §718.203(2).  The component part, the DuPont resin which was fabricated into a sheet by another company and later included within a finished manufactured product, is not "materials" within the meaning of the statute.

It is well-established in Florida that the party that assembles and sells a product on its own is considered the manufacturer, for warranty purposes of the entire product, including its components.  *Holmer v. Ford Motor Co.,* 239 So.2d 40, 42 (Fla. App. 1970).  Thus, in this case Longianese is the manufacturer and the ultimate supplier for the purposes of any implied warranty remaining to Grovenor House.  Yet, Longianese was not named a defendant in this case.

DuPont cannot be considered a manufacturer not having fabricated the glass or assembled the glass canopy and being merely a remote supplier of a component of the canopy that was fabricated and sold by Longianese.  There is nothing in the statute to suggest that the Legislature intended to abrogate the well-settled principles of common law or those governing component suppliers under Florida warranty law.

In addition, the Florida Supreme Court has addressed the meaning of "materials" in §718.203(2) in a manner that fully supports DuPont's position. *See Leisure Resorts, Inc. v. Rooney*, 654 So.2d 911(Fla. 1995).  There, the object involved was an air conditioning unit supplied to the construction site by the manufacturer of the unit.  The Supreme Court concluded "that manufactured items constitute 'material' as that term is used in *Section* 718.203(2)."  *Id*. at 914.  In *Leisure Resorts*, the fully manufactured unit was delivered to the contractor.  *Id*. at 912.

In this case, the DuPont component was incorporated into the glass canopy by the manufacturer long before the delivery of the fully fabricated canopy to Grovenor House.  Unlike the situation in *Leisure Resorts* where the air conditioner manufacturer made the delivery of the finished units to the worksite, DuPont never delivered anything to the worksite nor did it fabricate the glass installed in the canopy. This statutory implied warranty is simply not applicable to DuPont because DuPont was not a "supplier" of "material" as used in the statute. The statutory warranty simply does not apply to DuPont.

            3**.**      **There is No Evidence In the Record That The SGP Sold To Longianese Was Defective Upon Delivery; Therefore There Is No Breach Of the Statutory Implied Warranty Of Fitness.**

In addition, here Grovenor House confuses the supplier's implied warranty with that of the developer's.  Under Florida Statute § 718.203(2), a contractor, subcontractor, or supplier of materials gives a statutory warranty of fitness when supplying materials.  However, a supplier does not warrant such material for a specific purpose under Fla. Stat. §718.203(2).  In contrast to the developer's implied warranty of fitness or merchantability for the purposes or uses intended, the contractor's implied warranty is one of fitness as to the work performed or material supplied. *Frank J. Rooney, Inc. v. Leisure Resorts, Inc.,* 624 So. 2d 773 (1993), *review granted* 639 So. 2d 979*, decision approved* 654 So.2d 911 (1995); *see also* "Changing Condominium Construction

Law in Florida: The Extension of the Contractor's Implied Warranty To "Material," 51 U. MIA

L.R. 169 (1996).

The Florida Supreme Court in *Leisure Resorts, Inc.,* 654 So.2d at 914, made it clear that

the developers and "contractors, subcontractors, and suppliers" warranties are very different:

> We do approve the district court's conclusion that the contractor's warranties and developer's warranties differ in scope. The district court noted a material distinction between the developer's warranty mandated by section 718.203(1) and the contractor's warranty mandated by section 718.203(2). The developer's implied warranty is a "warranty of fitness or merchantability *for the purposes or uses intended* " whereas the contractor's implied warranty is a "warranty of fitness *as to the work performed or material supplied.*" When the legislature has used a term, as it has here, in one section of the statute but omits it in another section of the same statute, we will not imply it where it has been excluded. *See Florida State Racing Comm'n v. Bourquardez,* 42 So.2d 87 (Fla.1949); *accord Ocasio v. Bureau of Crimes Compensation,* 408 So.2d 751 (Fla. 3d DCA 1982). Furthermore, the recognition of two distinct warranties comports with the idea that purposes or uses intended are matters more within the control of the developer who has control of the design of the building, while competency of work performed and quality of the materials supplied in constructing condominium buildings based upon the plans and specifications encompassed within the building contract are matters within the control of the contractor. **To be in compliance with the section 718.203(2) implied warranty of fitness then, the contractor must provide work and materials which conform with the generally accepted standards of workmanship and performance of similar work and materials meeting the requirements specified in the contract**. *See David v. B & J Holding Corp.,* 349 So.2d 676 (Fla. 3d DCA 1977).

*Leisure Resorts, Inc. v. Frank J. Rooney, Inc.*  654 So.2d 911, 914 (Fla. 1995)

Thus, *Leisure Resorts* establishes that in order to comply with the implied warranty of

fitness, the contractor, subcontractor, or supplier must provide work and materials that conform

with "materials meeting the requirements <u>specified in the contract</u>."  654 So. 2d at 911, emphasis

added.  DuPont's statutory warranty, therefore, only required that the SentryGlas® Plus ("SGP")

that Longianese purchased from DuPont was not defective when received by Longianese. To

prove a claim of implied warranty for fitness, a plaintiff must show that a defect existed in the

7

product when it left defendant's control.  *Serksnas v. Engine Support, Inc.*, 392 F. Supp. 392 (S.D. Fla. 1975) (applying Florida law). The record is devoid of any proof that the SGP purchased by Longianese was defective.  [SUF ¶ 18].  DuPont did not by statute impliedly warrant that the SGP <u>was fit for the specific purpose for which Longianese intended to use it in the design of the glass canopy with the metal attachment system at the Grovenor House</u>. As *Leisure Resorts* established, the implied warranty does not extend to the specific use of the materials in the design of the project – that is the developer's warranty.  *See Leisure Resorts, Inc.*, 624 So. 2d at 773, *review granted* 639 So. 2d 979*, decision approved in part, quashed in part* 654 So. 2d 911*, on remand* 666 So. 2d 1053*, on remand* 683 So 2d 509.  The statutory warranty simply does not apply to DuPont as Grovenor House intends.

Accordingly, Defendant DuPont is entitled to the entry of summary judgment with respect to Count I.[3]

## C.     DuPont Is Entitled to Summary Judgment As To The Negligent Misrepresentation Claim (Count II).

---

[3]     The Court should also take the opportunity to reconsider its prior ruling regarding privity.  *See* D.E. 77 at 3. It is undisputed that there was no privity between DuPont and Grovenor House (the developer) or even Grovenor House's general contractor, CMC Construction, Inc. Florida law is well settled that an implied warranty claim requires that there be privity between the parties.  *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp 2d 1336 (S.D. Fla. 2009) (collecting Florida cases); *Tindle Enterprises, Inc. v. Plastic Trends, Inc.*, 2009 U.S. Dist. LEXIS 36194, *6- *8 (N.D. Fla. 2009) (same).

The Court's "Cf." citation to *Charley Toppino & Sons, Inc. v. Seawatch at Maranthon Condo. Ass'n.*, 658 So. 2d 922 (Fla. 3d DCA 1994) in its order denying DuPont's Motion to Dismiss is distinguishable.  There, the manufacturers and suppliers of concrete and a metal decking system had a direct relationship to the construction site and to the plaintiffs.  *Id.* at 923. Remote suppliers of components, such as DuPont, which do not have a direct relationship to the delivery of supplies to the worksite in a manufactured form, are simply not covered by any expansive abrogation of the common law, and some other privity is necessary to form the basis of implied warranty liability.

Grovenor House alleges in Count II of its Complaint that DuPont negligently misrepresented to Grovenor House that the "SentryGlas® Plus interlayer product would adequately and properly function and work in the entrance canopy glass panels for the Grovenor House Condominium." Complaint ¶¶ 22-23. The Complaint alleges that this misrepresentation was made during a meeting at the Fontainebleau Hotel (Complaint ¶¶ 9-10) and in "written materials and other marketing documentation" (Complaint ¶ 11).

      **1.      Grovenor House Cannot Establish the Elements For A Claim Of Negligent Misrepresentation.**

To prove a claim for negligent misrepresentation under Florida law, a plaintiff must show that (1) there was a misrepresentation of material fact, (2) the representor knew of the misrepresentation, or was without knowledge of its truth or falsity, or ought to have known of its falsity, and (3) the representor intended to induce another to act on the misrepresentation, and (4) injury resulted to a party acting in justifiable reliance. *Waterford LLC v. Garlick*, 2009 U.S. Dist. LEXIS 22522 (N.D. Fla. Feb. 2, 2009); *Atlantic Natl'l Bank of Fla. v. Vest*, 480 So.2d 1328, 1331-32 (Fla. 2d DCA 1985).

Here, the misrepresentations alleged in paragraph 10 and 11 of the Complaint are not borne out by the record evidence. Assuming that Mr. Valentini's version of the "Fountainbleau meeting" is accurate [*see* SUF 10], the evidence establishes that there was <u>no</u> representation that the SGP would "work and properly perform when incorporated into the entrance canopy glass system." Complaint ¶ 10. Furthermore, Mr. Valentini testified that he did not receive any written material from DuPont regarding SGP [SUF 27] and neither did he learn of the representations made on DuPont's website concerning SGP until <u>after</u> the canopy was built [*id.*] – not before.

In addition, the record evidence establishes that – even assuming arguendo – that representations regarding the fitness of SGP for use in the glass canopy was discussed at the

Fontainebleau meeting, that the decision had already been made by then to use SGP in the Manfroni design of the canopy. *See* SUF ¶ 8. There was, therefore, no reliance by Grovenor House on any representations made by DuPont at the Fontainebleau meeting.

### 2.   The Economic Loss Rule Bars The Claim.

"The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Indemnity Ins. Co. of North Am. v. Am. Aviation, Inc.,* 891 So.2d 532, 536 n. 1 (Fla. 2004) (also explaining that "[e]conomic losses are, simply put, disappointed economic expectations"). As explained in *American Aviation,* Florida courts have applied the economic loss rule in two different contexts. "The first is when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract." *Id.* at 536.

With respect to this context (which the Florida Supreme Court has labeled the "contractual privity economic loss rule"), the rule was developed "to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." *Id.* "Underlying this rule is the assumption that the parties to a contract have allocated the economic risks of nonperformance through the bargaining process." *Id.* As the Florida Supreme Court further explained:

> A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract.

*Id.* at 536-537; *see also Vesta Const. and Design, L.L.C. v. Lotspeich & Associates, Inc*., 974 So.2d 1176, 1179 (Fla.5th DCA 2008).

Here, Grovenor House's subcontractor, Longianese, has negotiated the economic risks attendant to an alleged failure of SGP to perform as expected through the very invoices in this case evidencing the sale of SGP to Longianese. The invoices contemplate the economic risks agreed upon and limits to that risk associated with the purchase and use of SGP by expressly disclaiming damages in excess of the replacement cost of the product. [SUF ¶¶ 15-17, Exs. Y and Z]. Moreover, Grovenor House has sought precisely the same purely economic damages under its tort-based claim for negligent misrepresentation (Count II) as in its warranty-based claims (Counts I and III). The economic loss rule, therefore, bars the claim.

Accordingly, Defendant DuPont is entitled to the entry of summary judgment on Count II of the Complaint.

### D.     DuPont Is Entitled To Summary Judgment As To the Breach of Express Warranty Claim (Count III).

Count III of the Complaint alleges that DuPont expressly warranted to Grovenor House that its SGP "interlayer laminating material would properly work and function in the glass canopy panels," and that it was damaged by DuPont's breach of such warranties. An express warranty has been defined as "[a] statement or representation made by the seller of goods, contemporaneously with, and as a part of the contract of sale, though collateral to the express object of it, having reference to the character, quality or title of the goods, and by which he promises or undertakes to insure that certain facts are or shall be as he then represents them." 77 C.J.S. Sales §301 at 1115 and §309 at 1135; 46 Am. Jur. , Sales, §299, at 482.

Under Florida law, express warranties are governed by Florida's version of the Uniform Commercial Code (UCC), particularly section 672.313 of the Florida Statutes. Section 672.313(1) states in pertinent part that a breach of an express warranty claim arises when a seller has made an affirmation or promise regarding goods which create an express warranty that the

goods shall conform to the description. § 672.313(a), (b). However, an affirmation merely of the value of the goods or a statement of the seller's opinion or commendation of the goods does not create a warranty. §672.313(2). To prove a claim for breach of express warranty, a plaintiff must show that an express warranty was created, that there was reliance, and that the defendant breached the warranty causing injury. *See Weimer v. Yacht Club Point Estates, Inc.*, 223 So. 2d 100, 104 (Fla. 4th DCA 1969).

It is well-established under Florida law that in order to recover for breach of warranty, "either express or implied, the plaintiff must be in privity of contract with the defendant." *T.W.M. v. Am. Med. Sys., Inc.,* 886 F. Supp. 842, 844 (N.D. Fla. 1995) (emphasis added); *see also Intergraph Corp. v. Stearman,* 555 So. 2d 1282, 1283 (Fla. Dist. Ct. App. 1990) ("Privity is required in order to recover damages from the seller of a product for breach of express or implied warranties.") (*citing Kramer v. Piper Aircraft Corp.,* 520 So. 2d 37 (Fla. 1988)) (emphasis added). As the Florida Supreme Court has explained, "[t]he term 'privity' is a word of art that derives from the common law of contracts [and] is commonly used to describe the relationship of persons who are parties to a contract." *Baskerville-Donovan Eng'rs, Inc. v. Pensacola Executive House Condo. Ass'n, Inc.,* 581 So. 2d 1301, 1303 (Fla. 1991); *see also Bland v. Freightliner LLC,* 206 F. Supp. 2d 1202, 1207 (M.D. Fla. 2002) ("Privity of contract is that connection or relationship which exists between two or more contracting parties."); 1 White & Summers, Uniform Commercial Code 11-2 (5th ed. 2009) (same). Accordingly, "[a] plaintiff who purchases a product, but does not buy it directly from the defendant, is not in privity with that defendant." *T.W.M.,* 886 F. Supp. at 844; *see also McAteer v. Black & Decker (U.S.), Inc.,* No. 98-303-Civ.-OC-10A, 1999 WL 33836701, at *3 (M.D. Fla. Sept. 13, 1999); *Barrow v. Bristol-Myers Squibb,* No. 96-689-CIV-ORL-19B, 1998 WL 812318, at *46 (M.D. Fla. Oct. 29, 1998).

.    The record is devoid of any facts to show that Grovenor House satisfies the privity requirement. Grovenor House did not purchase the SGP interlayer product directly from DuPont. *T.W.M*, 886 F. Supp. at 844 ("A plaintiff who purchases a product, but does not buy it directly from the defendant, is not in privity with that defendant."). Rather, Grovenor House contracted with CMC Construction. CMC Construction accepted the canopy design of Manfroni. CMC Construction contracted with Longianese to fabricate the glass canopy and install it. CMC Construction did not contract with DuPont. DuPont was merely a remote supplier of a component part to Longianese.

### 1.    **"Direct Contacts" Cannot Establish Privity In This Case.**

Recognizing that it cannot establish contractual privity because it never purchased SGP, Grovenor House has contended in opposition to DuPont's Motion to Dismiss that it had other "contacts" with DuPont and may assert that these alleged contacts create privity of contract under Florida law. Grovenor House's reliance on the "direct contacts" theory of privity discussed in *Cedars of Lebanon Hospital Corp. v. European X-Ray Distributors of Am., Inc.,* 444 So. 2d 1068 (Fla. Dist. Ct. App. 1984) and *Carnival Corp. v. Rolls-Royce PLC,* No. 08-23318-CIV, 2009 WL 3861450 (S.D. Fla. Nov. 17, 2009) would be greatly misplaced. Even if the Florida Supreme Court were to recognize some form of general privity based on "direct contacts" - which it has never done[4] - the application of this principle as laid out in *Cedars of Lebanon* and

---

[4]    In a diversity action, it is axiomatic that "[u]nder the *Erie* doctrine, a federal court adjudicating state law claims applies the substantive law of the state." *Ungaro-Benages v. Dresdner Bank AG,* 379 F.3d 1227, 1232 (11th Cir. 2004). And in applying state law, a federal court "must decide the case the way it appears the state's highest court would." *Ernie Haire Ford, Inc. v. Ford Motor Co.,* 260 F.3d 1285, 1290 (11th Cir. 2001). Thus, while "federal courts are [generally] bound by decisions of a state's intermediate appellate courts," this is not true where there is "persuasive evidence that the highest state court would rule otherwise." *Bravo v. United States,* 577 F.3d 1324, 1325 (11th Cir. 2009). DuPont submits that the Florida Supreme Court's statement on privity in *Baskerville-Donovan Eng'rs, Inc. v. Pensacola Executive House Condo. Ass'n,* 581 So.2d 1301, 1303 (Fla.1991) is persuasive evidence that *Cedars of Lebanon* was wrongly decided and would not be followed by Florida's highest court.

*Carnival* should be limited to the specific factual circumstances of those cases and held to be inapplicable here on the record evidence.[5]

In *Cedars of Lebanon,* the plaintiff hospital purchased an x-ray machine through a distributor and then sued the manufacturer when the x-ray machine failed to function. 444 So. 2d at 1069.  Prior to purchasing the x-ray machine, the manufacturer made extensive representations about the machine - the very product that was ultimately purchased - directly to the hospital. Based on these "direct contacts" and representations by the manufacturer, the hospital purchased "brand new equipment which [did] not work properly and [could not] be made to work properly," in other words, the equipment was "worthless." *Id.* at 1072 & n.3. Under those circumstances - where a complex technical system passed unaltered from defendant to a plaintiff through an intermediary and where the manufacturer made extensive direct representations about the system - the court found that the plaintiff could pursue its claims for breach of warranty against the product manufacturer even though the product was purchased through an intermediary. *Id.* at 1072 ("Requiring the purchaser to go against the seller who must proceed against the manufacturer [would be] wasteful and inefficient under these circumstances.").

In *Carnival,* this Court relied on *Cedars of Lebanon* to hold that "actual privity is not always necessary" to sustain a breach of warranty claim. *Carnival*, 2009 WL 3861450, at *3. The dispute in *Carnival* involved a sophisticated propulsion system that the defendants manufactured and which was installed on the plaintiff's Queen Mary 2 cruise ship. In finding that there was "general privity" between the parties, this Court relied on plaintiff's allegations that "prior to the purchase of the [propulsion] system, [the defendant] had several significant direct contacts with Plaintiff, that during those contacts [the defendant] made representations about the

---

[5]       *See, e.g., McGraw v. Fleetwood Enters., Inc.,* No. 6:07-cv-234-Orl-28DAB, 2007 WL 2225976, at **2-3 & n.6 (M.D. Fla. Aug. 1, 2007) (noting that "the ruling in [*Cedars of Lebanon*] was strictly limited to its facts" and dismissing plaintiff's implied warranty claim due to a lack of privity).

qualities and attributes of the [propulsion] system, and that Plaintiffs relied on these representations in deciding to purchase the [propulsion] system." *Id.* at *3. Significantly, as was the case in *Cedars of Lebanon,* the product about which the defendant made the alleged representations was *unaltered* between the time it left the defendant's warehouse and when it was installed in the plaintiff's cruise ship.

Here, the record evidence shows that not only did Grovenor House not purchase SGP from DuPont, but it never purchased SGP from any third-party distributor as in *Cedars* and *Carnival*. [SUF ¶ 14-20]. Longianese purchased the SGP from DuPont to be used as a component part of its manufacturing of the glass canopy for CMC Construction. *Id.* In addition, it is undisputed that the product – assuming *arguendo* it was "purchased" by Grovenor House -- is in a significantly altered product from the sheets manufactured and sold by DuPont. Longianese inserted them between two pieces of glass using a sophisticated and complex heating process. *See* Exhibit E at 13-15. The laminating processing significantly altered the SGP before it reached Grovenor House. Thus, a significant factor justifying the *Cedars of Lebanon* and *Carnival* cases' relaxation of the privity requirement - that the product passed through in unaltered form - is not present in this case and renders the rulings in those two cases inapplicable here.

Even under the unique third-party beneficiary relationship described in *Carnival,* Grovenor House cannot establish privity.  The only contacts that Grovenor House had with DuPont before contracting with Longianese is one meeting that lasted an hour to an hour and half at the Fontainebleau Hotel. Grovenor House did not review any written materials or DuPont's website before contracting with Longianese to manufacture the laminated glass panels for the canopy [*see* SUF ¶¶ 9, 10, 11, 27]and these do not amount to the "significant" and "heavily

involved" contacts that are required to meet privity in the absence of a contract or direct purchase.

Thus, where, as here, plaintiff has failed to establish privity with the defendant, a breach of warranty claim fails as a matter of law.  *See  Jacobs v. Osmose, Inc*., 2002 WL 34241682, *5 (S.D. Fla.) (dismissing complaint that included both express and implied warranty claims because it contained "no factual allegations showing privity of contract between [the plaintiff] and the Defendants."); *McAteer v. Black & Decker, Inc*., 1999 WL 33836701, *3 (M.D. Fla.) (manufacturer not liable under warranty theories because plaintiff did not buy product from defendant or contract in any way with defendant);  *T.W.M.*, 886 F. Supp. at 844.

Accordingly, Defendants are entitled to summary judgment on Count III of the Complaint.

### F. The Conditions Of Sale On The Back Side of DuPont's Orders of Acknowledgement and Invoices Are Valid And Binding Upon Longianese, CMC Construction, and Grovenor House.

The purchase orders, orders of acknowledgement, and invoices [Exs. X, Y, and Z] between DuPont and non-party Longianese define their relationship -- their agreement --, and limit the damages recoverable by Longianese (and thereby others in the vertical chain) under any theory of liability.[6] Each of the orders of acknowledgement and invoices sent to Longianese from September 2004 to October 2005 contain limitations. These limitations, among other things, provide that:

- "Where goods have been processed in any manner by anyone after they have been sold, any warranty given by Seller shall be limited to the goods in the condition in which they were sold."

---

[6] *See Suzy Phillips Originals, Inc. v. Coville, Inc.,* 939 F. Supp. 1012 (E.D. N.Y. 1996), *aff'd,* 125 F. 3d 845 (2d Cir. 1997); *Action Orthopedics, Inc. v. Techmedica Inc.,* 759 F. Supp. 1566, 1569 (M.D. Fla. 1991); *Hi Neighbor Enterprises, Inc. v. Burroughs Corp.,* 492 F. Supp. 823, 827 (N.D. Fla. 1980) (applying Uniform Commercial Code); *see also* The Hague Convention, Art. 2 and 3; Swiss Code of Obligations, Art. 100, para. 1. (Swiss law recognizing limitations on liability).

- "No claim of any kind, whether as to goods delivered . . . shall be greater in amount than the purchase price of the goods in respect of which such damages are claimed.  Seller accepts no liability for any indirect or consequential loss, or loss of profit."

[SUF ¶ 17].

The single-sided purchase orders did not purport to limit the application of different terms and conditions or material alterations by DuPont. In response, DuPont issued orders of acknowledgement, shipped the SGP to Longianese, and issued separate invoices from September 2004 through October 2005.  [SUF ¶ 14]. The back of each invoice contains DuPont's "Terms and Conditions of Sale." [SUF ¶¶ 17].

Florida enacted the Uniform Commercial Code ("Florida UCC") to "simplify, clarify, and modernize the law governing commercial transactions"; to "permit the continued expansion of commercial practices through custom, usage, and agreement of the parties"; and to "make uniform the law among the various jurisdictions." Fla. Stat. § 671.102(1).[7]

Here, Longianese submitted a series of purchase orders directly to DuPont for the SGP used in the glass panels. The one-sided purchase orders did not contain any conditions, limitations or representations, and did not make acceptance conditional on DuPont's assent to their terms. DuPont responded by sending an order of acknowledgment, shipping the SGP, and forwarding invoices containing DuPont's "TERMS AND CONDITIONS OF SALE" on the back. As set forth below, any additional terms and conditions became part of the parties' bargain under Florida UCC Section § 672.207. This provision states:

---

[7]     The Florida UCC applies to transactions between "merchants." § 672.104 of Florida's code defines a "merchant" as a party who, dealing "in goods of the kind of otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or ... who by his occupation holds himself out as having such knowledge or skill." Accordingly, this matter involves a contract for the sale of goods between merchants.

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) The offer expressly limits acceptance to the terms of the offer;
(b) They materially alter it; or
(c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this code.

§ 672.207.

Additional contract terms, such as DuPont's Terms and Conditions of Sale, become part of an agreement where, as here, the buyer repeatedly orders and accepts the manufacturer's product, receives the seller's terms and conditions, and consistently fails to object. *See American Signal Co. v. All American Semiconductor of Atlanta, Inc.,* No. 1:05-cv-2200-GET, 2006 U.S. Dist. LEXIS 78571 (N.D. Ga. Oct. 24, 2006). This is so because the element of "surprise," which bears upon whether the alteration is "material," is lacking. *Id.* at *22 (concluding that terms and conditions printed on invoices and packing slips became part of the parties' agreement because the buyer, despite receiving four separate shipments, repeatedly failed to object; additional terms could not "constitute unfair surprise, and thus, the additional terms disclaiming warranties for the Unity LEDs are not 'material alterations' to the agreement"). *See also Dixie Aluminum Prods. Co., Inc. v. Mitsubishi Int'l Corp.,* 785 F. Supp. 157, 160 (N.D. Ga. 1992) (enforcing arbitration provision contained on the backs of confirming documents sent to buyer; buyer's "repeated

failure, over sixteen prior transactions, to object to the arbitration provision (or even to read it) does not indicate unfair surprise and therefore is not 'material.' ") (citing *Schulze & Burch Biscuit Co. v. Tree Top, Inc.,* 831 F.2d 709, 714-15 (7th Cir. 1987) ("Where a party has received twenty-four invoices with a certain type of charge expressly listed, he should not be surprised if the twenty-fifth contains the same charge ...")). The circumstances here warrant the same conclusion.

Application of Section 672.207 indicates that the Terms and Conditions of Sale became part of the parties' bargain. Longianese's purchase orders did not expressly limit acceptance to their own terms. *See* § 672.207(a). Nor did Longianese notify DuPont, within a reasonable time, that it objected to the Terms and Conditions of Sale.  Nor did the additional terms and conditions materially alter the parties' agreement within the meaning of Section 672.207(b). The "purpose of preventing additional terms which materially alter the contract from becoming part of the agreement is to prevent unfair surprise or hardship if incorporated without express awareness by the other party." *American Signal Co.,* 2006 U.S. Dist. LEXIS 78571 at *20 (internal quotation omitted) (quoting comment 4 to U.S.C. § 2-207 (1998)). Moreover, Section 672.208(1) of Florida's Code, dealing with course of performance, states that if a contract "involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement."

Here, Longianese had repeated opportunities to object to the Terms and Conditions of Sale, but did not. *See* Declaration of Michael Fehlings ¶ 7, Exhibit "AA." If Longianese desired to prevent these terms from becoming part of the parties' agreement, it should have provided

notice of objection within a reasonable time. Thus, DuPont's Terms and Conditions of Sale are not "material alterations" to the agreement under § 672.207(2)(b).

**1.      Florida Expressly Permits Limitation Of Incidental And Consequential Damages**

Florida law allows contracts to limit damages recoverable for breach of warranty, and such provisions are enforceable.[8] Florida's Commercial Code expressly permits manufacturers such as DuPont to "limit or alter the measure of damages recoverable under [the] article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts." § 672.719(1)(a). *See also* 672.316(4) (parties may limit remedies for breach of warranty pursuant to 672.719). "Consequential damages may be limited or excluded," and such limitations in the commercial context (as opposed to bodily injuries in the consumer goods context) are expressly permitted by Florida law. *See* 672.719(3). Unlike Section 672.316(2), Section 672.719 does not require that the limitation of liability appear in a conspicuous writing.

Where, as here, the claims asserted are not for personal [bodily] injury, Florida law permits the limitation or exclusion of consequential damages so long as the limitation is not "unconscionable."[9] § 672.719.

---

[8] *See Hi Neighbor Enterprises, Inc. v. Burroughs Corp.,* 492 F. Supp. 823, 827 (N.D. Fla. 1980). In *Hi Neighbor,* the court granted a summary judgment in favor of the defendant, a seller of computer software, restricting the damages available to those provided for in the applicable limitation of liability provision. The District Court for the Middle District of Florida has likewise held that "[u]nder both applicable case law and the Florida Uniform Commercial Code, contracts may limit damages recoverable for breach of contract, and if such provisions are made, greater compensatory damages may not be awarded." *Action Orthopedics, Inc. v. Techmedica Inc.,* 759 F. Supp. 1566, 1569 (M.D. Fla. 1991).

[9] 672.719(3) provides that limitation of consequential damages for personal injury involving consumer goods is *prima facie* unconscionable, but such a limitation in the commercial context is not *prima facie* unconscionable.

In *Suzy Phillips Originals, Inc. v. Coville, Inc.,* 939 F. Supp. 1012 (E.D.N.Y. 1996), *aff'd,* 125 F. 3d 845 (2d Cir. 1997), the Court granted a seller's motion for summary judgment to limit a buyer's damages to the cost of the contracted-for goods and to bar a claim for lost profits or consequential damages, as provided in the seller's invoices to which the buyer never objected or proposed additional terms. Specifically, the court found that because the limitation of liability clause in the seller's form did not materially alter the terms of the contract under § 672.207(2), the clause formed a valid and enforceable part of the contract. *Id.* at 1019. In so holding, the court relied on the aforementioned Comment 5 to § 672.207 and on a test set out by the court in *In re Chateaugay Corp.,* 162 B.R. 949, 958 (S.D.N.Y. 1994), for determining whether a limitation of liabilities clause constitutes a material alteration of a contract:

> Between merchants, where U.C.C. § 2-207(2)(a) and 2(c) does not apply, the limitations on remedies or damages become part of the parties' agreement, unless the non-assenting party proves that (1) its inclusion constitutes reasonable surprise in light of the parties' prior dealings, industry custom or inconspicuousness of the term, or (2) the clause is unconscionable or (3) the limitation fails of its essential purpose. (Citations omitted).

939 F. Supp. at 1018.

The *Suzy Phillips* court concluded that a limitation of consequential damages where, like the instant case, the loss is commercial is ordinarily not considered procedurally or substantively unconscionable since the UCC encourages contracting parties to shape their remedies to their particular requirements. *Id.* The court also found that the buyer had not presented any evidence that the limitation failed of its essential purpose. *Id.* Finding that all of the parties' dealings were

on the same terms and the lack of any evidence that the limitation terms at issue were inconspicuous,[10] the court determined that they did not materially alter the parties' agreement and could not cause the buyer unreasonable surprise. *Suzy Phillips,* 939 F. Supp. at 1019.[11]

### 2.       DuPont's Terms and Conditions Of Sale Are Neither Procedurally Nor Substantively Unconscionable[12]

In this case, there is no procedural unconscionability, particularly given the age, education, intelligence, business acumen and experience of the parties. Both DuPont and Longianese are sophisticated, experienced business entities. Longianese cannot dispute that, as the entity essentially responsible for administering the design and construction of the glass canopy, it routinely entered into agreements with various material suppliers and subcontractors. There is no contention or suggestion that Longianese's relationship with DuPont was somehow different from that with any other materials supplier. Nothing indicates any inequality in bargaining power. Additionally, DuPont also sent its Terms and Conditions of Sale to Longianese over the course of many months and received payment without objection. Thus, Longianese cannot somehow claim any element of "surprise" at the terms and conditions.

Nor are the Terms and Conditions of Sale substantively unconscionable. As noted, Longianese and DuPont are experienced business entities. The purpose and effect of the terms

---

[10]      Under Florida law, there is no requirement that a limitation on damages or in a written warranty must be "conspicuous." *Lennar Homes, Inc. v. Masonite Corp.,* 32 F. Supp. 2d 396, 401 (E.D. La. 1998) (applying Florida law).

[11]      A number of other courts have similarly held that a contracting party's repeated failure to object to terms and provisions contained in another party's invoices establishes a course of conduct between the parties from which an agreement can be inferred. *See e.g., Mead Corp. v. Stevens Cabinets, Inc.,* 938 F. Supp. 87 (D. Mass. 1996) (granting a motion for summary judgment in favor of a seller on the basis of unobjected-to limitation of liability and limitation of action provisions contained in acknowledgment forms); *Sudenga Indus., Inc. v. Fulton Performance Prod,* 894 F. Supp. 1235 (N.D. Iowa 1995) (granting partial summary judgment in favor of seller based upon one year statute of limitations on warranty claims contained in invoices issued relatively contemporaneously with the shipment of goods).

[12]      A claim that a limitation of damages is unconscionable or fails of its essential purpose does not under Florida create a factual issue precluding the entry of summary judgment. *See Lennar Homes,* 32 F. Supp. 2d at 401 (question of conscionability of limited warranty under Florida law is one for the court).

are clear. DuPont supplied a product used in the fabrication of a glass canopy. It is not, as Grovenor House would have the Court believe, an insurer of Longianese's fabrication of the glass panels. Indeed, parties such as Longianese and Grovenor House have ready access to other measures to redress the type of loss occurring here. The overall cost of DuPont's products contrasts strikingly to the unlimited exposure urged by Grovenor House.

In the instant case, the agreement between the parties is clear, if the product did not conform to the warranty, DuPont would replace it or refund the purchase price. Open-ended, speculative damages based upon categories such as the removal and replacement of an entire glass canopy were beyond the parties' contemplation. Indeed, voiding the conditions of sale in this case, or allowing Grovenor House to circumvent them would effectively undo every such limitation in all such transactions. The Terms and Conditions of Sale expressly contemplate and anticipate that the product may not conform to the warranty. In that instance, the Terms and Conditions of Sale carefully define and limit DuPont's responsibilities. Thus, even if Grovenor House could seek Longianese's damages through the claims pled in the Complaint, the terms and conditions contained in the invoices cap any recovery.

## III.    <u>CONCLUSION</u>

For the reasons set forth above, Defendant DuPont is entitled to summary judgment on Counts I, II and III of the Complaint as a matter of law.  Alternatively, with regard to the warranty claims asserted in Counts I and III of the Complaint, partial summary judgment should be granted in favor of DuPont limiting Grovenor House's damages (if any) to the replacement cost of the allegedly defective SGP or the refund of Longianese's purchase price, as agreed to by the parties.

Respectfully submitted:

s/  Nelson C. Bellido
Nelson C. Bellido
Florida Bar No.: 974048
Scott A. Burr
Florida Bar No.: 0099325
Gavin N. L. White
Florida Bar. No.: 0537853
CONCEPCION SEXTON & MARTINEZ
355 Alhambra Circle, Suite 1250
Coral Gables, Florida 33134
Telephone: (305) 444-6669
Facsimile: (305) 444-3665
*Counsel for the Defendant*

DATE:  July 13, 2010                    *E. I. du Pont de Nemours and Company*

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 13, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/  Scott A. Burr_____
    Scott A. Burr
    Florida Bar No.: 0099325

## <u>SERVICE LIST</u>

*Grovenor House, L.L.C. v. E. I. du Pont de Nemours and Co.*
Case No. 09-21698-CIV-COOKE/BANDSTRA
United States District Court, Southern District of Florida

Daniel L. Wallach
Steven B. Lesser
Perry M. Adair
Kenn W. Goff
Becker & Poliakoff, P.A.
3111 Stirling Road
Ft. Lauderdale, Florida 33312

**Counsel for Plaintiff**