UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-21698-Civ-COOKE/BANDSTRA

GROVENOR HOUSE, L.L.C.,

    Plaintiff

vs.

E.I. DU PONT DE NEMOURS
AND COMPANY
_____/

## ORDER ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

THIS CASE is before me on the Defendant's Motion for Summary Judgment as to Liability on Counts I, II, and III of the Complaint, and the Plaintiff's Motion for Summary Judgment as to Certain Affirmative Defenses of Defendant. I have reviewed the Parties' arguments, the record, and the relevant legal authorities. For purposes of clarity, this order does not track the exact format of either of the Parties' motions for summary judgment, but instead focuses on the various issues that are raised. As explained in this order, the Plaintiff's motion for summary is granted in part, and denied in part. The Defendant's motion for summary judgment is granted in part, and denied in part.

### I. BACKGROUND

The Plaintiff, Grovenor House, L.L.C., is the developer of the Grovenor House Condominium, located in Coconut Grove, Florida. The Defendant, E.I. Du Pont de Nemours and Company, is a manufacturer of a product known as SentryGlas® Plus (SGP), which is used as an interlayer to manufacture laminated glass. Grovenor House contends that a contingent from Dupont met with Grovenor House's representatives to discuss the use of SGP in the construction of a glass canopy over the entryway of the Grovenor House Condominium. Grovenor House

asserts that DuPont assured the Grovenor House representatives that the SGP was a quality product and would provide adequate long term performance, and that the SGP would work and perform properly when incorporated into the entrance canopy glass system.

The general contractor for the Grovenor House Condominium, CMC Construction, Inc., subcontracted with an Italian company, Vetreria Longianese, S.R.L. ("Longianese") to manufacture and install the glass canopy at the Condominium. After construction was completed, the panels of glass began to split apart, or delaminate. Grovenor House filed this lawsuit against Dupont alleging breach of a statutory implied warranty of fitness (count I), negligent misrepresentation (count II), and breach of an express warranty (count III).

## II. LEGAL STANDARDS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial . . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the

nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"). The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007).

### III. ANALYSIS

*A.     Count I: Breach of Statutory Implied Warranty*

    1.     **The applicable warranty period is three years.**

Under Florida's Condominium Act, a contractor and all "suppliers" grant an implied warranty of fitness for the materials supplied to the developer of a condominium. Fla. Stat. § 718.203(2) (2006). This statutory implied warranty of fitness is for a period of three years "from the date of completion of construction of a building or improvement" for a roof or a structural component of the building or improvement. Fla. Stat. § 718.203(2)(a) (2006). The warranty is

3

for a period of one year for "all other improvements and materials." Fla. Stat. § 718.203(2)(b) (2006).

DuPont argues, citing to the declaration of William Moore, a senior consultant with Curtainwall Design Consulting, the canopy is not a roof or structural component of the building, and therefore the warranty was only for one year. (Def.'s Mot. for Summ. J. 4 [ECF No. 176]; Def.'s Reply to Pl.'s Resp. 3-4 [ECF No. 211]). DuPont concludes, since the canopy was completed in December 2005, that the warranty period had expired by the time the Grovenor House discovered that the panels of the canopy were delaminating in July 2008. (*Id.*). In response, Grovenor House cites to the declaration of Tim Wensing, the President of CMC Construction, Inc., arguing that the canopy in this case was in fact a roof or structural component of the building, thus triggering a three-year warranty. (Pl.'s Resp. in Opp'n 5 [ECF No. 196]). DuPont concedes that "the [c]anopy is an 'improvement' to the Grovenor House Condo providing cover for persons and automobiles." (Def.'s Reply to Pl.'s Resp. 4 [ECF No. 211]). Neither Party has cited any legal authority for what constitutes a roof or structural component, nor has either party engaged in a statutory analysis on this issue. The Parties' arguments are limited to divergent conclusory statements from their respective experts.

"The interpretation of a statute is a question of law." *Rine v. Imagitas, Inc.*, 590 F.3d 1215, 1222 (11th Cir. 2009). Since the statute at issue does not define the terms roof or structural component "the Court must resort to canons of statutory construction in order to derive the proper meaning." *Reform Party of Fla. v. Black*, 885 So.2d 303, 316 (Fla. 2004) (quoting *Nehme v. Smithkline Beecham Clinical Labs., Inc.*, 863 So. 2d 201, 204-05 (Fla. 2003)). A fundamental tenet of statutory construction is that a court give "statutory language its plain and ordinary meaning, unless words are defined in the statute or by the clear intent of the

legislature." *Id.* at 316-17.  Another cannon of statutory construction is the doctrine of *in pari materia*, under which "statutes relating to the same subject or object be construed together to harmonize the statutes and to give effect to the Legislature's intent." *Fla. Dept. of State, Div. of Elections v. Martin*, 916 So. 2d 763, 768 (Fla. 2005).

Section 718.203 is clear that the three year warranty applies to "a roof or a structural component of the building *or* improvement."  Fla. Stat. § 718.203(2)(a) (2006) (emphasis added).  The term "structural component" is defined in section 489.105 as "any vertical or horizontal load-bearing member of a structure which supports dead or live loads in addition to its own weight and includes, but is not limited to, a foundation, an exterior or interior load-bearing wall, a column, a column beam, a floor, and a roof structure.  Fla. Stat. § 489.105(3)(15) (2006).[1]  The word roof is not defined in the Florida Statutes.  The ordinary meaning of the word "roof" is the top external covering of a building or structure.  *See, e.g., N. Desoto Estates, L.L.C. v. Johnson*, 21 So. 3d 1068, 1071 (La. Ct. App. 2009); *Dewsnup v. Farmers Ins. Co. of Or.*, 229 P. 3d 354, 321-22 (Or. Ct. App. 2009); *Ace Prop. & Cas. Ins. Co. v. Vegas VP, LP*, No. 07-00421, 2008 WL 2001760, at *5 (D. Nev. May 7, 2008).

Here, the Parties do not dispute that the canopy, as designed and constructed, was required to withstand various gravity loads.  (*Compare* Pl.'s Opp'n to Def.'s Stmt. of Facts ¶ 34 [ECF No. 197] *with* Def.'s Reply to Pl.'s Opp'n to Def.'s Stmt. of Facts ¶ 34 [ECF No. 210]).  In this respect, the canopy is a "load-bearing member of a structure which supports dead or live loads in addition to its own weight."  Fla. Stat. § 489.105(3)(15) (2006).  The undisputed evidence demonstrates that the canopy meets the statutory definition of a structural component –

---

[1] Chapter 498 of the Florida Statutes covers the regulation of professions relating to construction contracting.  Since section 489.105 and section 718.203 both relate to the same subject, namely construction, it is appropriate to invoke the doctrine of *in pari materia* in this context to give meaning to the term structural component.

it is a structural component of an improvement. Additionally, the canopy is clearly the top external covering of a structure. DuPont candidly admits that the canopy is a "roof-like structure . . . forming a sheltered area at the entrance of the building." (Def.'s Reply to Pl.'s Opp'n to Def.'s Stmt. of Facts ¶ 35 [ECF No. 210]). DuPont argues that the canopy is an improvement and not a roof over the building. (Def.'s Reply to Pl.'s Resp. 3-4 [ECF No. 211]). The statute, however, clearly reads "building *or* improvement," and the canopy is a roof over the improvement.

I find that the canopy structure is an improvement to the Grovenor House Condominium, and the canopy is a roof and structural component of the improvement. Accordingly, the applicable warranty period is three years. DuPont's motion to dismiss as to this issue is denied.

### 2. There is a material issue of fact as to whether the Defendant, E.I. DuPont de Nemours and Company, was a supplier of the SGP.

DuPont cites to the Plaintiff's statement in its opposition memorandum that "the invoices [for the SGP] themselves indicate that they are not from the defendant in this matter; i.e. E.I. DuPont de Nemours and Company. Rather the invoices indicate they are from a different entity described as 'DuPont de Nemours International S.A.'" (Pl.'s Resp. in Opp'n 17 [ECF No. 196]; *see also* Pl.'s Opp'n to Def.'s Stmt. of Facts ¶ 54 [ECF No. 197]). DuPont argues, that this evidence demonstrates that DuPont de Nemours International S.A. was the supplier of the SGP, and if any statutory warranty is owed it is DuPont de Nemours International S.A. that owes it, not the Defendant. DuPont did not initially move for summary judgment on this issue. Instead this argument was first presented in DuPont's Reply Brief, and as such Grovenor House has not had an opportunity to respond.

DuPont does not cite to any record evidence to establish that it did not supply the SGP to DuPont de Nemours International S.A. To be clear, at trial, Grovenor House will bear the

burden of establishing that E.I. DuPont de Nemours and Company supplied the SGP. For purposes of this summary judgment analysis, however, DuPont as the moving party bears the burden of presenting admissible evidence to show that there is no genuine issue over this fact. DuPont has not met its burden. Summary judgment is denied as to this issue.

3. **The statutory warranty applies, even to remote component suppliers.**

DuPont argues that Florida's statutory implied warranty does not extend to remote component suppliers. DuPont then asserts that it is a remote component supplier of the SGP. Grovenor House responses by pointing out that Florida Statute section 718.203 does not distinguish between suppliers and remote component suppliers, and thus DuPont is a supplier under the plain meaning of the statute.

As stated above, under Florida's Condominium Act, a contractor and all "suppliers" grant an implied warranty of fitness for the materials supplied to the developer of a condominium. Fla. Stat. 718.203(2) (2006). DuPont is incorrect in its assertion that the Florida Supreme Court's holding "that manufactured items constitute 'materials' as that term is used in section 718.203(2)" stands for the proposition that only manufactured items can constitute materials under section 718.203(2). (Def.'s Mot. for Summ. J. 6 [ECF No. 176]) (citing *Leisure Resorts, Inc. v. Frank J. Rooney, Inc.*, 654 So. 2d 911, 914 (Fla. 1995)). Even if all manufactured items are materials, it is an error in logic to conclude that all materials are manufactured items. In other words, just because manufactured items are materials does not mean that *only* manufactured items are materials.

"[W]hen the language of a statute is clear and unambiguous and conveys a clear and definite meaning . . . the statue must be given its plain and obvious meaning." *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984) (quoting *A.R. Douglass, Inc. v. McRainey*, 137 So. 157, 159 (Fla.

1931).  In this case the statute is clear and unambiguous: "all . . . suppliers . . . grant to the developer . . . implied warranties of fitness as to the . . . materials supplied by them."  Fla. Stat. § 718.203(2) (2006).  Assuming that Grovenor House can establish that the Defendant, E.I. DuPont de Nemours and Company, supplied the SGP, DuPont cannot avoid the application of Florida's statutory implied warranty on the basis of it being a remote component supplier.  Under the plain meaning of the statute, a supplier is a supplier.  DuPont's motion for summary judgment on this issue is denied.

    **4.**    **The scope of any statutory implied warranty from DuPont is a warranty of fitness, however a material issue of fact exists as to whether the SGP was defective.**

DuPont argues, to the extent that it owes a statutory implied warranty as a supplier, the proper scope of that warranty is limited to a "warranty . . . of fitness as to the materials supplied." (Def.'s Mot. for Summ. J. 6 [ECF No. 176]).  Specifically, DuPont argues that under section 718.203(2) a suppler does not warrant materials for a specific purpose.  (*Id.*).  DuPont next asserts that there is no evidence that the SGP purchased by Longianese was defective.  Grovenor House distinguishes the Florida case law relied on by DuPont, noting that the Florida Supreme Court in *Leisure Resorts* was applying the statute to a contractor as opposed to a supplier.  Grovenor House also argues that even if DuPont's argument regarding the scope of the warranty is correct, the ultimate question of whether the SGP was defective is for the jury. (Pl.'s Resp. in Opp'n 11 [ECF No. 196]).

Under Florida's Condominium Act, a contractor and all "suppliers" grant an implied warranty of fitness for the materials supplied to the developer of a condominium.  Fla. Stat. § 718.203(2) (2006).  The Florida Supreme Court has noted the distinction between "the developer's warranty mandated by section 718.203(1) and the contractor's warranty mandated by

8

section 718.203(2)." *Leisure Resorts*, 654 So. 2d at 914. "The developer's implied warranty is a 'warranty of fitness or merchantability *for the purposes or uses intended*' whereas the contractor's implied warranty is a 'warranty of fitness *as to the work performed or material supplied.*'" *Id.* (quoting Fla. Stat. § 718.203). "To be in compliance with the section 718.203(2) implied warranty of fitness then, the [supplier] must provide . . . materials which conform with the generally accepted standards of workmanship and performance of similar work and materials meeting the requirements specified in the contract."). *Id.*

The scope of DuPont's warranty, assuming that Grovenor House can establish that the Defendant, E.I. DuPont de Nemours and Company, is a supplier of the SGP, is that of a warranty of fitness for the materials supplied. There is, however, a material question of fact as to whether the SGP was defective when supplied. DuPont's motion for summary judgment on this issue is granted in part, as to the scope of the warranty, and denied in part as to whether the SGP was defective.

### 5. **Material issues of fact exist as to whether the SGP was "state of the art" when DuPont delivered it to Longianese.**

Grovenor House argues that summary judgment should be granted to foreclose DuPont from asserting its "state of the art" affirmative defense. (Pl.'s Mot. for Summ. J. 6-7 [ECF No. 178]). Grovenor House seems to concede, however, that the state of the art is something for the jury to consider. (*Id.* at 7). Grovenor House also asserts that it need not prove that the SGP was defective. (Pl.'s Reply in Support of Mot. for Summ. J. 8 [ECF No. 216]).

In order for a plaintiff to recover under an implied warranty theory, the plaintiff must prove that the product was defective. *Amoroso v. Samuel Friedland Family Enters.*, 604 So. 2d 827, 833 (Fla. Dist. Ct. App. 1992). Since the issue of whether the SGP was state of the art is

9

relevant to at least one of Grovenor House's claims, and since there is evidence to support this affirmative defense, the motion for summary judgment on this issue is denied.

### B. *Count II: Negligent Misrepresentation*

#### 1. **Florida's economic loss rule does not bar Grovenor House's claim in tort.**

Grovenor House asserts, DuPont made assurances that the SGP would be ideal for use in the canopy glass system and would perform well notwithstanding the difficult South Florida environment. (Pl.'s Second Am. Stmt. of Facts ¶ 5 [ECF No. 188]). DuPont disputes that it made the representations alleged by Grovenor House. DuPont candidly concedes that that Grovenor House's claim for negligent misrepresentation must be determined by a jury if it is not disposed of by Florida's economic loss rule. (Def.'s Reply to Pl.'s Resp. in Opp'n 6 [ECF No. 211]).

"The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004). In Florida, the economic loss rule is applied in two different circumstances. *Id.* "The first is when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract" – this is known as the contractual privity economic loss rule. *Id.* "The second is when there is a defect in a product that causes damage to the product but causes no personal injury or damage to other property" – this is known as the products liability economic loss rule. *Id.* Since DuPont and Grovenor House are not in contractual privity, this case involves the products liability economic loss rule.[2]

---

[2] DuPont seems to argue that since there is a contract between DuPont de Nemours International S.A. and Longianese that this issue is governed by the contractual privity economic loss rule. (*See* Def.'s Mot. for Summ. J.10-11 [ECF No. 176]). The contractual privity economic loss rule

The products liability economic loss rule bars a lawsuit for a tort where a defective product causes no personal injury or damage to other property. *Id.* at 542-43. In this context, the carve-out for "personal injury or damage to other property" is an exception that nearly swallows the rule. *See Am. Aviation*, 891 So. 2d at 543 (explaining that in a typical property damage case, the defective product damages other property, and thus escapes application of the economic loss rule) (quoting *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 867 (1986)).

In this case, the canopy at issue is made up of 126 pieces of laminated glass called laminates. (Pl.'s Second Am. Stmt. of Facts ¶ 3 [ECF No. 188]). Each laminate consists of two panes of glass together with four or more metal attachments used to secure the laminates to the frame supporting the canopy. (*Id.*). The panes of glass are bonded together with DuPont's SGP product, and the metal attachments are bonded to the laminates by the SGP as well. (*Id.* at ¶ 4). The glass is delaminating, and as a result all of the glass must be replaced. (*Id.* at ¶ 8). While DuPont disputes that the SGP was defective, there is a material question of fact regarding this issue. If Grovenor House is able to establish at trial that the SGP was defective, then this case falls within the exception to the products liability economic loss rule since the allegedly defective product caused damage to other property, namely the canopy structure. For these reasons, DuPont's motion for summary judgment as to Count II (negligent misrepresentation) is denied. Grovenor House's motion for summary judgment as to DuPont's affirmative defense asserting the economic loss rule is granted.

---

is only applicable when a plaintiff and a defendant are both parties to the same contract; the fact that a party to a lawsuit is in contractual privity with a non-party is not relevant to this analysis. *Cf. Am. Aviation*, 891 So. 2d at 536 ("A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made.").

>   2.   **Material issues of fact exist as to whether Grovenor House itself, as well as other non-parties, caused or contributed to Grovenor House's damages.**

DuPont argues that Grovenor House, as well as several other non-parties share all or part of the fault in this case. Specifically, DuPont has identified, among others, the designer of the canopy, the contractor, the fabricator, as well as Grovenor House itself. DuPont is correct that the record contains sufficient evidence from which a reasonable jury could conclude that entities and/or individuals other than DuPont caused or contributed to Grovenor House's damages. (*See, e.g.,* Report of A. William Lingnell, P.E. 6 [ECF No. 191-1] (concluding that possible causes on the delaminating include the design, fabrication, installation, and maintenance of the canopy). Grovenor House's motion for summary judgment on this issue is denied.

C.   *Count III: Breach of Express Warranty*

>   1.   **Evidence of DuPont's direct contacts with Grovenor House are sufficient to sustain the Plaintiff's claim for breach of express warranty.**

DuPont argues, the record evidence establishes that Grovenor House and DuPont are not in contractual privity with one and other, and therefore Grovenor House's breach of warranty claim fails as a matter of law. DuPont attempts to distinguish the Florida and Federal cases which have held that consumer-plaintiffs need not always be in contractual privity with a manufacturer-defendant in order to sustain a claim for breach of warranty. (Def.'s Mot. for Summ. J. 14-15 [ECF No. 176]). DuPont's position is that the rationale of the cases that allow a plaintiff to proceed with a breach of warranty claim against a manufacturer-defendant, with whom the plaintiff is not in privity, is based on the fact that the product passes in an unaltered form from the manufacturer-defendant, through an intermediary, to the consumer-plaintiff. (*Id.*).

A review of the case law on this issue reveals that courts addressing this issue focus on the "direct contacts" between the manufacturer-defendant and the consumer-plaintiff and not on

the state of the product – altered or unaltered. *Cedars of Lebanon Hosp. Corp. v. Eur. X-Ray Distribs. of Am. Inc.*, 444 So. 2d 1068, 1072 n.4 (Fla. Dist. Ct. App. 1984) (emphasizing that the court was "focusing on the direct contacts between the manufacturer and the ultimate purchaser/consumer in finding that privity exists"); *see also Carnival Corp. v. Rolls-Royce PLC*, No. 08-23318, 2009 WL 3861450, at * 3 (S.D. Fla. Nov. 17, 2009) (focusing on the allegations of "significant direct contacts").

In this case there is evidence of direct contacts between DuPont and Grovenor House. (*See* Def.'s Stmt. of Facts ¶¶ 9-10 [ECF No. 175]). There is a material issue of fact as to whether DuPont made the representations that Grovenor House has alleged. DuPont's motion for summary judgment on Grovenor House's express warranty claim based on the lack of privity is denied.

  **2.** **Material issues of fact exist as to whether the limitation of liability provisions in DuPont's invoices apply to Grovenor House's claims for breach of express warranty.**

DuPont asserts as an affirmative defense, and on motion for summary judgment, that the limitation of liability provisions in the contracts between DuPont and Longianese apply to limit DuPont's liability in this action. Grovenor House argues that since it is not a party to these contracts it cannot, as a matter law, be held to the terms and conditions of the contracts. DuPont responds that Longianese was an agent of Grovenor House, and that any knowledge that Longianese had regarding the limitation of liability provisions, should be imputed to Grovenor House.

Grovenor House next asserts that the contracts for the SGP cannot limit the liability of the Defendant, E.I. DuPont de Nemours and Company, because the contracts are between DuPont de Nemours International S.A. and Longianese. DuPont responds to this point, arguing

that since there is no evidence that the SGP purchased by Longianese from DuPont de Nemours International S.A. was manufactured by the Defendant, E.I. DuPont de Nemours and Company Grovenor House's claim for breach of express warranty fails as a matter of law.

The issue of whether Longianese was an agent of Grovenor House is a disputed material issue of fact to be resolved by the jury. Further, the issue of the relationship between the Defendant, E.I. DuPont de Nemours and Company and DuPont de Nemours International S.A. is unclear based on the record evidence. (*See, e.g.,* Decl. of Michael Fehlings ¶ 1 [ECF No. 176-27] (identifying Dupont de Nemours (Deutschland) GmbH as the defendant in this lawsuit)). Accordingly, summary judgment on this issue, in favor of either party, would be inappropriate.

### 3. Material issues of fact exist as to whether the limitation of liability provisions in DuPont's invoices are enforceable.

In addition to the issues discussed above, in section III(C)(2), DuPont contends that each shipment of SGP sent to Longianese was followed by an invoice limiting DuPont's liability to the purchase price of the goods and expressly not accepting any liability for consequential losses. Grovenor House argues that DuPont has not established that the limitation of liability clause is not substantially or procedurally unconscionable.[3]

Florida's Uniform Commercial Code provides that, between merchants, where a "definite and seasonable expression of acceptance or a written confirmation is sent within a reasonable

---

[3] Grovenor House also argues that the application of Florida law to this issue is inappropriate, given that the contract was between two foreign corporations and that the invoices stated that its terms and conditions should be construed in accordance with the laws of Switzerland. Grovenor House presents no legal authority or argument as to how the contract would be construed under Swiss law. DuPont presents a declaration from its "Swiss law expert" to conclude that the limitation clauses are enforceable. The information presented in this conclusory declaration, however, is not sufficient for me to make a determination on this issue under Swiss law. Additionally, DuPont asserts that Swiss law is no different than Florida law on the issue of enforcement of the limitation of liability clauses. (Def.'s Reply to Pl.'s Resp. 10 [ECF No. 211]).

time," it operates as "an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms." Fla. Stat. § 672.207(1) (2006). "The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless . . . [t]hey materially alter it." Fla. Stat. § 627.207(2). A limitation of liability clause may be considered a material alteration to a contract if the party proposing the limitation clause is aware that the other party may incur substantial losses if a breach occurred. *Paul Gottlieb & Co., Inc. v. Alps S. Corp.*, 985 So. 2d 1, 8 (Fla. Dist. Ct. App. 2007) (citing and quoting *Dale R. Horning Co., Inc. v. Falconer Glass Indus., Inc.*, 730 F. Supp. 962, 967 (S.D. Ind. 1990)).

DuPont asserts that Longianese is a merchant, as that word is defined by Florida's Uniform Commercial Code, however, DuPont has failed to cite to any record evidence for this proposition. (*Compare* Def.'s Stmt. of Facts ¶ 4 [ECF No. 175] *with* Pl.'s Opp'n to Def.'s Stmt. of Facts ¶ 4 [ECF No. 197]). Additionally, an issue exists as to whether the limitation of liability clause was a material alteration, since there is some evidence that DuPont knew of Grovenor House's intended use of the SGP, and thus may have been aware of the potential for substantial losses if a breach occurred. Finally, DuPont has not cited to any portion of the record for its statement that "[b]oth DuPont and Longianese are sophisticated, experienced business entities." (Def.'s Mot. for Summ. J. 4 [ECF No. 176]). Given the lack of record evidence on this issue, summary judgment cannot be granted on the issue of whether the limitation of liability clause was a valid and enforceable part of the contract.

## IV. CONCLUSION

For the reasons explained in this order, it is **ORDERED and ADJUDGED** as follows:

1. The Defendant's Motion for Summary Judgment [ECF No. 174] is **GRANTED in part**, and **DENIED in part**. The Defendant's Motion is granted only as to the scope of the statutory implied warranty, *i.e.*, that it is a warranty of fitness as to the materials supplied.

2. The Plaintiff's Motion for Summary Judgment [ECF No. 178] is **GRANTED in part**, and **DENIED in part**. The Plaintiff's Motion is granted only as to DuPont's affirmative defense asserting the economic loss rule, *i.e.*, that DuPont may not assert the economic loss rule as an affirmative defense in this matter.

3. The Plaintiff's Motion for Leave to File an Amended Undisputed Statement of Material Facts [ECF No. 183] is **GRANTED**, *nunc pro tunc*.

4. The Defendant's Motion to Strike the Plaintiff's Statement of Material Facts [ECF No. 184] is **DENIED** as moot, in light of the Plaintiff's Amended Undisputed Statement of Material Facts.

**DONE and ORDERED** in chambers, at Miami, Florida, this 25th day of August 2010.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Ted E. Bandstra, U.S. Magistrate Judge*
*Counsel of record*