UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLOIRDA

Case No. 09-21698-Civ-COOKE/BANDSTRA

GROVENOR HOUSE, L.L.C.,

    Plaintiff

vs.

E.I. DUPONT DE NEMOURS AND COMPANY,

    Defendant.
_____/

## OMNIBUS ORDER ON POST-TRIAL MOTIONS

THIS MATTER is before me on the Defendant's Motion for Judgment as a Matter of Law as To Liability On Counts I, II, and III of the Complaint (ECF No. 273), the Plaintiff's Renewed Motion for Judgment as a Matter of Law, Motion for Rehearing on Defendant's Amendment to Answer, and Motion for New Trial (ECF No. 294), and the Defendant's Renewed Motion for Judgment as a Matter of Law as to Count III (ECF No. 296). I have reviewed the motions, the Parties' arguments, the record, and the relevant legal authorities. Additionally, I heard argument on several of these issues during the trial of this matter. For the reasons explained on the record during trial, and for the reasons set out in this order, the Defendant's motion for leave to amend its pleadings to conform with the evidence is granted (the Plaintiff's motion for rehearing on this issue is denied). The Defendant's motion for judgment as matter of law is granted as to Counts I and III, and denied as to Count II, and the Plaintiff's renewed motion for judgment as a matter of law and the Plaintiff's motion for new trial are denied.

I. BACKGROUND

The Plaintiff, Grovenor House, L.L.C., is the developer of the Grovenor House Condominium, located in Coconut Grove, Florida.  The Defendant, E.I. Du Pont de Nemours and Company, is the manufacturer of a product known as SentryGlas® Plus ("SGP"), which is used as an interlayer to manufacture laminated glass.  A contingent from Dupont met with Grovenor House's representatives to discuss the use of SGP in the construction of a glass canopy over the entryway of the Grovenor House Condominium.  Grovenor House alleged that DuPont assured the Grovenor House representatives that the SGP was a quality product and would provide adequate long term performance, and that the SGP would work and perform properly when incorporated into the entrance canopy glass system.

The general contractor for the Grovenor House Condominium was CMC Construction, Inc.  CMC subcontracted with an Italian company, Vetreria Longianese, S.R.L. ("Longianese") to manufacture and install the glass canopy at the condominium.  After construction was completed, the panels of glass began to split apart, or delaminate.  Grovenor House filed this lawsuit against Dupont alleging breach of a statutory implied warranty of fitness (count I), negligent misrepresentation (count II), and breach of an express warranty (count III).  On September 30, 2010 this case proceeded to a jury trial on all counts set out in the Plaintiff's complaint.

II. LEGAL STANDARDS

A.  *Motion For Judgment As a Matter Of Law*

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a). A court reviewing a motion for judgment as a matter of law must "consider all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party," and "determine whether, in this light, there was any legally sufficient basis for a reasonable jury to find in favor of the nonmoving party." *Advanced Bodycare Solutions , LLC v. Thione Int'l Inc.*, 615 F.3d 1352, 1360 (11th Cir. 2010).

B. *Motion To Amend The Pleadings To Conform With The Evidence*

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move – at any time, even after judgment – to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

Fed. R. Civ. P. 15(b)(1). "The intent of rule 15(b) is to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 568 (7th Cir. 2006) (internal citations omitted); *see also Hassan v. U.S. Postal Svc.*, 842 F.2d 260, 263 (11th Cir. 1998) ("We must avoid hypertechnicality in pleading requirements and focus, instead, on enforcing the actual purpose of the rule.").

C. *Motion For a New Trial*

"The court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). "A motion for a new trial may be granted if the district court judge believes the verdict rendered by the jury was contrary to the great weight of the evidence." *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1320 n. 3 (11th Cir. 1999).

3

### III. ANALYSIS

**A.  *DuPont's Motion for Judgment as a Matter Of Law as To Count I (Statutory Implied Warranty)***

Under Florida's Condominium Act, a contractor and all "suppliers" grant an implied warranty of fitness for the materials supplied to the developer of a condominium. Fla. Stat. § 718.203(2) (2006). The Florida Supreme Court has noted the distinction between "the developer's warranty mandated by section 718.203(1) and the contractor's warranty mandated by section 718.203(2)." *Leisure Resorts v. Frank J. Rooney, Inc.*, 654 So. 2d 911, 914 (Fla. 1995). "The developer's implied warranty is a 'warranty of fitness or merchantability *for the purposes or uses intended*' whereas the contractor's [or supplier's] implied warranty is a 'warranty of fitness *as to the work performed or material supplied.*'" *Id.* (quoting Fla. Stat. § 718.203). "To be in compliance with the section 718.203(2) implied warranty of fitness then, the [supplier] must provide . . . materials which conform with the generally accepted standards of workmanship and performance of similar work and materials meeting the requirements specified in the contract.". *Id.*

The distinction between the two types of warranties is substantial. A warranty for the purposes or uses intended – *i.e.* for a particular purpose – "contemplates a specific use by the buyer which is peculiar to the nature of his business." *See* 6 Thomas D. Sawaya, Florida Practice § 13:22 (2010-2011 ed.). On the other hand, a warranty to conform to the generally accepted standards of workmanship – *i.e.*, for the ordinary purpose purposes for which the goods are used – "relates to uses that are customarily made of the goods sold to the buyer." *See id.*

Based on the plain language of Florida Statute Section 718.203, and the Florida Supreme Court's interpretation of that Section, the elements for a cause of action under Florida Statute Section 718.203, against a supplier of materials to a condominium, are: (1) the defendant is a

supplier of materials to a condominium; (2) the materials failed to conform to the generally accepted standards of merchantability applicable to goods of that kind, or the materials filed to conform to the requirements specified in the contract – *i.e.*, the materials were defective; (3) the failure of the goods to conform (the defect) was a proximate cause of the plaintiff's damages. *See* Fla. Stat. § 718.203(2) (2005); *Leisure Resorts*, 654 So. 2d at 914; *cf. also Amoroso v. Samuel Friedland Family Enters.*, 604 So. 2d 827, 833 (Fla. Dist. Ct. App. 1992) (setting out the "elements to prove liability under an implied warranty theory").

    DuPont argues that Grovenor House failed to present any evidence that the SGP failed to conform to the generally accepted standards of workmanship. (*See* Def.'s Mot. for J. as a Matter of Law 3, ECF No. 273). Grovenor House counters that the SGP was defective because it did not conform "to the generally accepted standards of workmanship and performance of similar material meeting the requirements specified in the contract." (Pl.'s Opp'n to Def.'s Mot. for J. as a Matter of Law 4, ECF No. 274).

    Here, there is no contract in evidence to which DuPont is a party which specifies any requirements. The contract that Grovenor House relies on for this proposition is between Longanise and CMC Construction. (*See* Def.'s Counter-Stmt. of Material Facts, Ex. L, ECF No. 191-12) (admitted at trial as Def.'s Ex. 1). Since there is no contract specifying certain requirements for the SGP product, the only issue is whether the SGP conformed with the generally accepted standards of workmanship and performance of similar materials.[1]

---

[1] Grovenor House's argument that the SGP did not perform in the same manner as using "bolted glass" – the alternative method of securing glass in the canopy – is not persuasive. The standard is whether the SGP conformed to *similar* materials. *Leisure Resorts*, 654 So. 2d at 914. Undisputed testimony at trial established that the bolted glass method was entirely different than the secured attachment method (which utilized the SGP). Since the bolted glass method is not *similar* to the secured attachment method, the comparison of these two methods is an

The only evidence offered by Grovenor House relating to the cause of the delamination was the testimony of its expert, June Wilcott. Ms. Wilcott testified as follows:

> Q. Did you form an opinion as to the cause of this delamination?
> A. I did.
> Q. What is your opinion?
> A. That when the SGP is loaded in this way and subject to high temperature, high humidity and structural load that the anchorage just does not work in that material in that application.
> Q. Do you have an opinion whether it was appropriate to use SGP in this application?
> A. For the anchorage point I do have an opinion. I don't believe it was appropriate for use at the metal anchorage points as a point of fixation or support for that glass.

(Trial Tr., vol. 6, 190:19 – 191:6, Oct. 8, 2010, ECF No. 287).

Ms. Wilcott's testimony is that the SGP was defective when used in the particular application of the Grovenor House canopy. In other words, her testimony provides evidence that the SGP was defective for the purposes or uses intended. Ms. Wilcott's testimony is not evidence that the SGP did not conform to the generally accepted standards of workmanship and performance of similar materials.

Grovenor House failed to present any evidentiary basis that a reasonably jury could find that the SGP failed to conform to the generally accepted standards of merchantability applicable to goods of that kind. In other words, Grovenor House failed to establish that the SGP was "defective," within the meaning of that term under Florida Statute Section 718.203. For these reasons, DuPont's motion for judgment as a matter of law as to Count I is granted.

**B.     *DuPont's Motion To Amend Its Pleadings To Conform To The Evidence***

At the close of the Plaintiff's case, DuPont moved to amend its pleadings to assert the affirmative defense of statute of frauds relating to Grovenor House's claim for breach of express

---

inappropriate analysis under the framework of the warranty established in Florida Statute Section 718.203.

warranty (Count III). DuPont argues that although Grovenor House maintained that that its breach of express warranty claim was based on "written material and other marketing documentation," in its complaint and throughout discovery, Grovenor House failed to "produce any such written marketing material that constituted a written warranty during its case." (Def.'s Mot. for J. as a Matter of Law 6-7, ECF No. 273) (quoting Compl. ¶ 11, ECF No. 1). Grovenor House contends that DuPont has waived any statute of frauds defense. (Pl.'s Opp'n to Def.'s Mot. for J. as a Matter of Law 8, ECF No. 274).

> The key factor in determining whether the pleadings have been amended is whether the issue has been tried with the express or implied consent of the parties. The test for such consent is whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment. One sign of implied consent is that issues not raised by the pleadings are presented and argued without proper objection by opposing counsel.

*Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 568 (7th Cir. 2006) (internal citations omitted).

Grovenor House has pointed out that since at least as far back as July 2010 – approximately two and a half months before trial – DuPont has vigorously and repeatedly emphasized that DuPont did not provide Grovenor House with an express *written* warranty. (Pl.'s Renewed Mot. for J. as a Matter of Law 22-23, ECF No. 294). Given this history, Grovenor House had fair notice that DuPont was challenging the existence of a writing to support Grovenor House's breach of express warranty claim. Since Grovenor House had notice of this issue, it had a fair opportunity to meet its burden of proof at trial. Grovenor House could have presented additional evidence, assuming such evidence existed, because it knew that DuPont was challenging this aspect of the express warranty claim. The issue of whether a *written* express warranty existed was on the table both before and throughout the trial.

7

Permitting DuPont to amend its answer to conform to the evidence, by adding an affirmative defense of statute of frauds, is consistent with Rule 15(b)(1) since the issue was tried with the express or implied consent of the parties.

**C.     *DuPont's Motion For Judgment as a Matter Of Law as To Count III (Express Warranty)***

DuPont argues that, under Florida law, a warranty for greater than a year must be in writing.  (Def.'s Renewed Mot. for J. as a Matter of Law 4, ECF No. 296).  DuPont reasons that since the canopy was completed in December 2005 and the delamination was discovered in June 2008, that any warranty covering this damage must necessarily have been for a period of greater than a year.[2]  DuPont argues that since Grovenor House failed to present any writing to support its allegations of a warranty, the breach of warranty claim must fail as a matter of law since the warranty did not comply with the statute of frauds.  (*Id.* at 5).  Grovenor House responds that, under Florida law, the statute of frauds does not apply to its express warranty claim.

Under Florida law "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker." Fla. Stat. § 672.201(1) (2005).  This is known as the statute of frauds.  "The statute of frauds 'grew out of a purpose to intercept the frequency and success of actions based on nothing more than loose verbal statements or mere innuendos' and 'should be strictly construed to prevent the fraud it was designed to correct.'" *Ala v. Chesser*, 5 So. 3d 715, 718 (Fla. Dist. Ct. App. 2009) (quoting *Yates v. Ball*, 181 So. 341, 344 (Fla. 1937)).  The statute of frauds does not, however, prevent the

---

[2]  The contract for the sale of the SGP was admitted at trial as Defendant's Exhibit One.  The date of the contract is May 2, 2005. (*See* Def.'s Counter-Stmt. of Material Facts, Ex. L, ECF No. 191-12) (admitted at trial as Def.'s Ex. 1).

enforcement of an oral agreement that has been fully performed. *Id.* at 719. This exception, known as the doctrine of full performance, "applies only when a plaintiff seeks purely equitable relief." *Id.* at 719-20, 720 n.5; *accord Topp, Inc. v. Uniden Am. Corp.*, 483 F. Supp. 2d 1187, 1194-95 (S.D. Fla. 2007).

In this products liability case, which is governed by Chapter 672 of the Florida Statutes, the evidence presented at trial revealed that the SGP was purchased in May 2005 and the delamination was discovered in June 2008. Grovenor House has not disputed these facts. (*See* Pl.'s Opp'n To Def.'s Renewed Mot. for J. as a Matter Of Law 13, ECF No. 304). Accordingly, any warranty covering the SGP in June 2008 was necessarily for more than one year, thus triggering application of the statute of frauds. Grovenor House argues that the statute of frauds does not apply here because there has been full performance. In other words, Grovenor House contends that because the SGP was already delivered and paid for that the oral warranty covering the SGP is outside of the application of the statute of frauds.

Grovenor House's argument fails for two reasons. First, Grovenor House's claim for breach of express warranty is an action at law for the recovery of damages while the performance exception applies only when a plaintiff seeks purely equitable relief. Second, as DuPont correctly points out, if a plaintiff were permitted to invoke the performance exception to the statute of frauds based on the completed sale of a product and then parlay that application of the exception to an alleged oral warranty then most warranties would not be covered by the statute of frauds. Essentially, Grovenor House is attempting to avoid the statute of frauds with respect to the warranty, which is notably absent from the contract, based upon the completed sale of the SGP. This argument, however, would neutralize the statute of frauds in most situations where a warranty is at issue. For example, under Grovenor House's theory, if a merchant sold a product

and several years later the product failed to perform the buyer could claim that the seller had provided an oral warranty, and the statute of frauds would not apply because of the completed sale. This scenario is completely contrary to the purpose of the statute of frauds, which is "to intercept the frequency and success of actions based on nothing more than loose verbal statements or mere innuendos." *Yates v. Ball*, 181 So. 341, 344 (Fla. 1937). As the Florida Supreme Court has indicated, the statute of frauds must be "strictly construed to prevent the fraud it was designed to correct." *Id.*

Here, Grovenor House failed to present any evidence at trial that there was a writing, signed by DuPont, sufficient to indicate that a contract for the warranty had been made between Grovenor House and DuPont. I find that a reasonable jury would not have a legally sufficient evidentiary basis to find that a written express warranty existed covering the SGP at the time the defects were discovered.[3] DuPont's motion for judgment as a matter of law as to Count III, for beach of express warranty, is granted.

### D. *Plaintiff's Renewed Motion For Judgment as a Matter Of Law and Motion For a New Trial*

The Plaintiff has renewed its motion for judgment as a matter of law that it initially raised during trial, and in the alternative moved for a new trial on the issue of allowing several of DuPont's affirmative defenses to be presented to the jury.

*1. The jury instruction on the negligent misrepresentation claim.*

Grovenor House contends that the jury instruction regarding its negligent misrepresentation claim was incomplete, contrary to Florida law, and inaccurate based on the

---

[3] Although the jury found that DuPont had given Grovenor House a warranty for the goods, such a warranty, as a matter of law, could not extend beyond one year in the absence of a writing signed by DuPont. The Parties do not dispute that an oral warranty can be created. However, an oral warranty for a period of time longer than a year violates the statutes of frauds.

10

evidence produced at trial.  (Pl.'s Renewed Mot. for J. as a Matter of Law 4, ECF No. 294).

Florida's standard jury instructions contains the following language for use in conjunction with a plaintiff's claim for negligent misrepresentation:

> First, whether (defendant) made a statement concerning a material fact that [he] [she] [it] believed to be true but which was in fact false;  Second, ***whether (defendant) was negligent in making the statement because [he] [she] [it] should have known the statement was false***;  Third, whether in making the statement, (defendant) intended [or expected] that another would rely on the statement; and
> Fourth, whether (claimant) justifiably relied on the false statement.

Standard Jury Instructions – Civil Cases, 777 So. 2d 378, 381-82 (Fla. 2000) (emphasis added).

The jury instructions in this case on the negligent misrepresentation claim contained the following language:

> Do you find from a preponderance of the evidence [t]hat a DuPont representative(s) made one or more misrepresentations regarding SentryGlas® Plus that he or she believed to be true, but in face was false?[;] . . . ***[t]hat DuPont was negligent in making the statement because it should have known the statement(s) was false?***[;] . . . [t]hat DuPont intended or expected Plaintiff to rely and act upon the misrepresentations?[;] . . . [t]hat Plaintiff "reasonably" and "justifiably"' relied upon the misrepresentations?

(Verdict, ECF No. 279) (emphasis added).  Grovenor House contends that the jury should have been asked to determine whether DuPont either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known it was false. (Pl.'s Renewed Mot. for J. as a  Matter of Law 4, ECF No. 294).

      The jury instruction given in this case regarding Grovenor House's negligent misrepresentation claim tracks the language approved by the Florida Supreme Court for negligent misrepresentation claims.  The language proposed by Grovenor House actually appears under the standard jury instructions for a claim of fraudulent misrepresentation – a different cause of action that was not pleaded by Grovenor House.  Given these facts and the state of the

11

law, the jury instruction given in this case as to the negligent misrepresentation claim was proper.

2. *DuPont's affirmative defense of mitigation.*

Grovenor House argues that the defense of mitigation should not have been submitted to the jury since there was no evidence of any failure to mitigate. (Pl.'s Renewed Mot. for J. as a Matter of Law 6, ECF No. 294). Grovenor House contends that in order to establish a failure to mitigate defense DuPont was required to submit concrete examples of situations where the Plaintiff failed to take advantage of an opportunity to mitigate. (*Id.*). DuPont responds that it proved Grovenor House's failure to mitigate through its cross-examination of witnesses during the Plaintiff's case. (Def.'s Omnibus Mem. In Opp'n 7-8, ECF No. 303).

The doctrine of mitigation of damages "prevents a party from recovering those damages inflicted by a wrongdoer that the injured party *could have* reasonably avoided." *Sys. Components Corp. v. Fla. Dept. of Transp.*, 14 So. 3d 967, 982 (Fla. 2009) (citation omitted). A party may demonstrate a plaintiff's failure to mitigate by establishing "hypothetical ameliorative actions that could have been accomplished." *Cf. id.*

DuPont has pointed to numerous instances in the record where it elicited testimony from the Plaintiff's witnesses that could allow a reasonable juror to conclude that Grovenor House did not get the best price that it could have for the replacement canopy. For example, Massimo Valentini, Grovenor House's corporate representative, testified that the installation job for the replacement canopy was not put out for bidding. (Trial Tr. vol. 2, 80-81, Oct. 1, 2010, ECF No. 283). From this evidence, it is reasonable for a juror to conclude that Grovenor House could have obtained the installation at a lower price had it used another company. Contrary to Grovenor House's suggestion, DuPont was not required to submit concrete examples of

situations where the Plaintiff failed to take advantage of an opportunity to mitigate. It was sufficient for DuPont to establish hypothetical ameliorative actions that could have been accomplished by Grovenor House but were not.

3. *The* Fabre *Defendants that were submitted to the jury*.

Grovenor House argues that it was inappropriate to include the *Fabre* Defendants on the verdict form because there was insufficient evidence demonstrating that any action or inaction on the part of any of those third parties was the cause of Grovenor House's damages. (Pl.'s Renewed Mot. for J. as a Matter of Law 7, ECF No. 294). Specifically, Grovenor House argues that the jury must have impermissibly stacked inferences in order to conclude that the *Fabre* Defendants were partially responsible for the Plaintiff's losses. (*Id.* at 9-11). DuPont responds that sufficient testimony was elicited to support a verdict against each of the *Fabre* Defendants. (Def.'s Omnibus Mem. In Opp'n 10, ECF No. 303).

The first *Fabre* Defendant at issue is Longianese, the manufacturer and installer of the glass panels. In addition to establishing that many of the glass panels that were used in the canopy contained blemishes, DuPont also elicited evidence that Longianese failed to conduct compatibility testing, and there was some evidence that Longianese may have manufactured the glass panels with the ceramic frit on the wrong side. The jury could have taken all of this evidence and made a reasonable, and permissible, inference that Longianese's negligence was partially to blame for the canopy failing.

The second *Fabre* Defendant challenged by Grovenor House is Odine Manfroni and Manfroni Engineering Workshop. Mr. Manfroni (and his company) were responsible for the design of the canopy. DuPont elicited testimony that Mr. Manfroni worked closely with Longianese, that Mr. Manfroni selected the SGP for use in the canopy, and that Mr. Manfroni did

not require compatibility testing with the Longianese glass and the SGP.  From these facts, it was reasonable for the jury to conclude that Mr. Manfroni (and his company) shared in the responsibility for the Plaintiff's damages.

The final *Fabre* Defendant at issue is CMC Construction, Inc.  CMC was the general contractor for the project.  DuPont elicited testimony that CMC selected the Manfroni canopy design to use, selected Longianese to manufacture and install the glass, and failed to inspect the glass before its installation.  The Plaintiff's own representative, Massimo Valentini, testified that the general contractor is ultimately responsible for everything that happens on the job.  (Trial Tr. vol. 3, 61, Oct. 4, 2010, ECF No. 284).  Based on the facts presented at trial it was reasonable for the jury to infer that CMC's actions and/or omissions contributed to the losses suffered by Grovenor House.

In conclusion, there was adequate evidence before the jury to support the jury's decision to allocate partial fault to the *Fabre* Defendants Longianese, Manfroni, and CMC.  There is nothing to suggest that the jury's decision was based on an improper stacking of inferences.  On the contrary, DuPont presented an abundance of evidence relating to each of the *Fabre* Defendants which supports the jury's verdict as it relates to the allocation of liability.

4. *The sufficiency of the jury's damage award*.

The jury awarded Grovenor House damages in the amount of $88,500.  Grovenor House argues that the record does not support this low an award, and reasons that the Plaintiff's "uncontradicted evidence demonstrated that its damages were at least $629,123.78." (Pl.'s Renewed Mot. for J. as a Matter of Law 24, ECF No. 294).  The verdict amount in this case, while obviously lower than what Grovenor House wanted, is supported by the evidence.  As DuPont points out, the Plaintiff submitted invoices from its vendors for the replacement costs of

the canopy.  The jury was free to peruse these invoices and accept or reject certain expenses claimed by Grovenor House.  There is no reason to conclude that the jury's verdict was not based on a careful and considerate review of evidence before them.

### IV. CONCLUSION

For the reasons explained on the record during trial, and for the reasons set out in this order, it is **ORDERED and ADJUDGED** as follows:

1. The Defendant's Motion for a Judgment as a Matter of Law as To Liability on Counts I, II, and III of the Complaint (ECF No. 273) is **GRANTED in part** as to Counts I and III, and **DENIED in part, as moot,** as to Count II.  The Defendant's Renewed Motion for Judgment as a Matter of Law as to Count III (ECF No. 296) is **GRANTED**.

2. The Plaintiff's Renewed Motion for Judgment as a Matter of Law, Motion for Rehearing on Defendant's Amendment to Answer, and Motion for New Trial (ECF No. 294) is **DENIED**.

**DONE and ORDERED** in chambers, at Miami, Florida, this 25th day of February 2011.

*Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Ted E. Bandstra, U.S. Magistrate Judge*
*Counsel of record*